**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

SWEEPSTAKES PATENT COMPANY, LLC,
a Florida limited liability company,

       Plaintiff,

v.

CASE NO.

BOBBY MOSELY, an individual, J. MICHAEL CALDWELL, an individual, GATEWAY SYSTEMS, LLC, a Delaware limited liability company, FRONTIER FLORIDA LLC, a Delaware limited liability company, BESTCO GAMING, INC., a South Carolina corporation, BEST AMUSEMENT, INC., a South Carolina corporation, ENTERPRISE PERFORMANCE SOLUTIONS, LLC, a South Carolina limited liability company, FRONTIER GAMING, INC., a South Carolina corporation, GATEWAY GAMING, LLC, a South Carolina limited liability company,

       Defendants.

**COMPLAINT FOR PATENT INFRINGEMENT
(JURY TRIAL DEMANDED)**

Plaintiff, SWEEPSTAKES PATENT COMPANY, LLC, a Florida limited liability company, sues the Defendants, BOBBY MOSELY, J. MICHAEL CALDWELL, GATEWAY SYSTEMS, LLC, a Delaware limited liability company, FRONTIER FLORIDA LLC a Delaware limited liability company, BESTCO GAMING, INC., a South Carolina corporation, BEST AMUSEMENT, INC., a South Carolina corporation, ENTERPRISE PERFORMANCE SOLUTIONS, LLC, a South Carolina limited liability company, FRONTIER GAMING, INC., a South Carolina corporation, and GATEWAY GAMING, LLC, a South Carolina limited liability company (collectively "Defendants"), and in support of their claims state as follows:

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to enjoin and obtain damages resulting from Defendants' unauthorized manufacture, use, sale, offer to sell and/or importation into the United States for subsequent use or sale of products, methods, processes, services and/or systems that are used or adapted for use in lottery and promotional sweepstakes games and that infringe one or more claims of United States Patent No. 5,569,082 entitled "Personal Computer Lottery Game," and United States Patent No. 5,709,603 also entitled "Personal Computer Lottery Game." Plaintiffs seek injunctive relief to prevent Defendants from continuing to infringe Plaintiffs patents and recovery of monetary damages resulting from Defendants' past infringement of these patents.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1338(a).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(b) because (a) Defendants reside in this judicial district and division and/or (b) and the acts complained of occurred within this judicial district and division and (c) Defendants have committed acts of infringement within this judicial district and division and have a regular and established place of business within this judicial district and division.

4. The activities of Defendants as alleged in this Complaint occurred in interstate commerce within the United States and within this judicial district.

5. Defendants are subject to personal jurisdiction in Florida because Defendants have solicited, transacted and done business within this judicial district.  In addition, Defendants unlawful conduct has taken place within this judicial district. Furthermore, jurisdiction over the Defendants will not offend traditional notions of fair play and substantial justice.

## PARTIES

6. Plaintiff, SWEEPSTAKES PATENT COMPANY, LLC ("SPC") is a Florida limited liability company with its principal place of business in Davie, Florida.

7. Defendant BOBBY MOSELY ("MOSELY") is an individual who does business in this judicial district and resides in Piedmont, South Carolina.

8. Defendant J. MICHAEL CALDWELL ("CALDWELL") is an individual who does business in this judicial district and resides in Piedmont, South Carolina.

9. Defendant GATEWAY SYSTEMS, LLC, ("SYSTEMS") is a Delaware limited liability company that does business in this judicial district and maintains its principal place of business in Piedmont, South Carolina.

10. Defendant FRONTIER FLORIDA, LLC ("FFLLC") is a Delaware limited liability company authorized to transact business in Florida that does business in this judicial district and maintains a principal place of business in Atlanta, Georgia.

11. Defendant BESTCO GAMING, INC. ("BESTCO") is a South Carolina limited liability company that does business in this judicial district and maintains its principal place of business in Piedmont, South Carolina.

12. Defendant BEST AMUSEMENT, INC. ("BEST") is a South Carolina corporation that does business in this judicial district and maintains its principal place of business in Piedmont, South Carolina.

13. Defendant ENTERPRISE PERFORMANCE SOLUTIONS, LLC ("EPS") is a South Carolina limited liability company that does business in this judicial district and maintains its principal place of business in Piedmont, South Carolina.

14. Defendant FRONTIER GAMING, INC. ("FRONTIER") is a dissolved South Carolina corporation that does business in this judicial district and maintains its principal place of business in Piedmont, South Carolina.

15. Defendant GATEWAY GAMING, LLC ("GAMING") is a dissolved South Carolina limited liability company that does business in this judicial district and maintains its principal place of business in Piedmont, South Carolina.

## PATENTS-IN-SUIT

16. Prior to April 6, 1995, Perry Kaye invented a new method and system for playing an interactive lottery type game for use in operating lotteries, charitable sweepstakes and promotional sweepstakes.

17. Mr. Kaye applied for and obtained United States Patent No. 5,569,082 which was duly and legally issued on October 29, 1996 (the '082 Patent). A true and correct copy of the '082 Patent is attached as Exhibit A.

18. Mr. Kaye also applied for and obtained United States Patent No. 5,709,603 which was duly and legally issued on January 20, 1998 (the '603 Patent). A true and correct copy of the '603 Patent is attached as Exhibit B.

19. Plaintiff SPC is the lawful assignee of all right, title and interest in and to the '082 Patent and the '603 Patent.

## THE INTERNET CAFÉ BUSINESS

20. The term "Internet Café" is commonly used to refer to a place of business that provides computers on premises for use by individuals who purchase internet access time. Customers of Internet Cafés purchase blocks of Internet time and then use computer terminals at the Internet Café to access the Internet for a wide range of purposes, including electronic

commerce, e-mail and social networking, job hunting, various forms of educational, political, religious, and entertainment activities. Customers purchase blocks of internet time which are then credited to the customer's account. For example, a $10.00 internet access time purchase would typically credit the customer's account with fifty (50) minutes of available internet access time. Customers who purchase internet access time receive a paper receipt or a plastic card with a magnetic strip containing the customer's a personal identification number (PIN). The PIN identifies the customer and allows the customer to access his or her account information located on a central server. The PIN also allows the customer to use the computers at the Internet Café to access the internet to check email, create documents, visit websites, participate in social networks, and engage in other activities requiring internet access.

21. To promote the sale of the internet access time, Internet Cafés offer promotional sweepstakes with prize giveaways. Customers purchasing internet time typically receive a proportional number of entries into a free promotional sweepstakes sponsored by the Internet Café. The sweepstakes promotes the sale of internet access time. The Internet Café typically sells internet access time at the market rate and provides the sweepstakes entries at no additional cost.

22. Internet Café customers participate in the sweepstakes by first approaching a computer terminal and logging on to the terminal by entering their PIN number or swiping their card. Internet Café computers are available to customers purchasing internet time or receiving sweepstakes entries (with or without purchase).

23. After logging on, the customer may connect to the internet and begin using the internet access time purchased. When the customer logs on she is then presented with a screen where she may choose whether to use the internet access time purchased to surf the internet, or whether she would like to reveal whether she has won or lost in the sweepstakes.

5

24. If the customer chooses to reveal whether she has won or lost in the sweepstakes, she is then presented with a screen that requires her to accept the rules of the sweepstakes to continue.

25. No purchase is necessary to receive the free sweepstakes entries. Any member of the general public over eighteen (18) years of age may receive sweepstakes entries upon request in person at the Internet Café or by mailing a written request to the address identified in the rules. All entries distributed without purchase are drawn from the same finite pool of entries and thus have the same chances of winning a prize as those entries distributed in connection with the purchase of internet access time.

26. If the customer agrees to the rules by clicking "I Agree" then she is presented with a series of screens to choose an amusement game called a "Sweepstakes Entry Revealer." Sweepstakes entries can be revealed or displayed using games, some of which include simulations of casino games. The video display uses interactive artwork, storylines, symbols, and text to create the emotions of excitement and suspense within the customer and to communicate the results of the entry. The customers may interact with the games but cannot affect the results of the entries. The customer terminals display the results of the entries but do not determine or affect the results in any way.

27. Internet Café sweepstakes entries are drawn from a set, or finite, pool of entries containing a precise number of winners, non-winners, first prizes, second prizes, etc. In other words, the pool of entries is pre-defined. When revealing results, the Internet Café's computers electronically draw the requested number of entries from the finite pool of available entries. The computer terminal then reveals the results of the entries in the manner chosen by the customer. The manner of entry distribution from the finite pool remains the same regardless of how the

customer reveals his or her results. Accordingly, how the entries are revealed plays no role in the results achieved. Once an entry is drawn, it is removed from the pool and is no longer available to subsequent participants.

28.     The operation of the computer terminal does not entitle the user to receive anything of value nor does the computer dispense anything of value. The individual computer terminals function only through a connection to a server. Customer's PIN numbers have no value and only serve as identification for the customer. The computer terminals do not function through the insertion of cash or anything of value. Additionally, the computers do not dispense cash or anything of value; all prizes are collected at the front desk.  Use of the computer terminals to reveal sweepstakes entries are free.  Customers do not expend their internet access time to reveal results.

DEFENDANTS

29.     Defendant CALDWELL is the Chief Executive Officer of Defendants SYSTEMS, FFLLC, BESTCO, BEST, EPS, FRONTIER and GAMING.

30.     Defendant MOSELY is the President of Defendants SYSTEMS, FFLLC, BESTCO, BEST, EPS, FRONTIER and GAMING.

31.     Defendants SYSTEMS, FFLLC, BESTCO, BEST, EPS, FRONTIER and GAMING all do business at the same principal place of business in Piedmont, South Carolina.

32.     Defendants CALDWELL and MOSELY are the principals and owners of SYSTEMS, FFLLC, BESTCO, BEST, EPS, FRONTIER and GAMING.

33.     Defendants SYSTEMS, FFLLC, BESTCO, BEST, EPS, FRONTIER and GAMING are all engaged in the business of making, using, offering to sell, licensing, and selling computer technology for managing and operating promotional sweepstakes at Internet Cafés.

34.     Defendants SYSTEMS, FFLLC, BESTCO, BEST, EPS, FRONTIER and GAMING, and each of them, are alter egos of each other and of CALDWELL and MOSELY in the business of making, using, offering to sell, licensing, and selling computer technology, computer hardware and computer software for managing and operating promotional sweepstakes and promotional lottery systems at Internet Cafes.

35.     Defendants have developed over one hundred sweepstakes software programs, including gaming programs entitled "Lucky Duck," "Mother-In-Law," "Stars and Stripes," "Mayan Lost City," "Texas Gold," and "Cool 7's." Defendants' products are distributed throughout the United States and can be found on more than 10,000 gaming units in over 250 gaming facilities.

36.     The computer based sweepstakes game products and systems made, used, marketed, licensed and sold by Defendants consist of lottery type games that enable players to enter promotional sweepstakes and win cash and prizes.  Defendants' customers and licensees operate the Internet Cafés described above in retail locations in shopping centers and stand-alone buildings.  Defendants' customers and licensees use Defendants' software to sell blocks of internet access time, to track the use of that purchased internet time, and to promote the sale of that internet time through promotional sweepstakes. Defendants license its technology on a per-terminal basis, meaning the Internet Café licensees must pay licensing fees for each computer terminal that will run the internet access software.  Internet Cafés use computer hardware and software systems made and sold by Defendants to market the sale of internet access time to their Internet Café customers. Defendants also maintain the computer hardware and software systems used by Internet Cafés.

INFRINGEMENT OF THE '082 AND '603 PATENTS

37. The '082 Patent and the '603 Patent are directed to systems and methods for playing a player-interactive sweepstakes game, including promotional sweepstakes and charitable sweepstakes, involving a gaming piece that includes a code that includes data indicating whether the player wins or loses an amusement game and a lottery-type sweepstakes game.

38. The computer based sweepstakes game systems offered by Defendants to customers of Internet Cafés offers promotional lottery games to the public pursuant to which the participant in such game, through chance alone, may win a prize for his participation in such game, without such participant being required to pay any consideration for his having participated in the game and, where in the jurisdiction in which such game is offered to the public, there is no requirement under applicable law to avoid such game being considered as a lottery scheme or gaming that there be any element of skill involved or other criteria present in the winning of such prize.

39. The computer based sweepstakes game systems offered by Defendants to customers of Internet Cafés directly infringe, contributorily infringe, induce others to infringe, or are used to practice processes that infringe, one or more claims of the '082 Patent and '603 Patent, including but not limited to at least claim 10 of the '082 Patent and claim 7 of the '603 Patent.

40. The computer based sweepstakes game systems made, marketed, licensed, sold and maintained by Defendants at Internet Cafés directly infringe, contributorily infringe, induce others to infringe, or are used to practice processes that infringe, one or more claims of the '082

9

Patent and '603 Patent, including but not limited to at least claim 10 of the '082 Patent and claim 7 of the '603 Patent.

41. The computer based sweepstakes game systems Internet Cafés use, operate, manage and offer to the public directly infringe, contributorily infringe, induce others to infringe, or are used to practice processes that infringe, one or more claims of the '082 Patent and '603 Patent, including but not limited to at least claim 10 of the '082 Patent and claim 7 of the '603 Patent.

42. The computer based sweepstakes game products and systems made, used, marketed, licensed, sold and maintained by Defendants, and utilized by Internet Cafés to market the sale of internet access time to their customers contain all the components of the interactive lottery type game systems described in claim 10 of the '082 Patent. One illustrative example is contained in the claim chart attached hereto as Exhibit C.

43. The computer based sweepstakes game products and systems made, used, marketed, licensed, sold and maintained by Defendants, and utilized by Internet Cafés to market the sale of internet access time to their customers, contain all the components of the interactive lottery type game systems described in claim 7 of the '603 Patent. One illustrative example is contained in the claim chart attached hereto as Exhibit D.

44. Plaintiffs have been irreparably harmed by Defendants' infringement of their valuable patent rights.

45. Defendants' unauthorized, infringing use of Plaintiffs' patented systems and methods has threatened the value of their intellectual property because Defendants' conduct results in Plaintiffs' loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and/or importing the patented inventions.

46. Defendants' disregard for Plaintiffs' property rights similarly threatens Plaintiffs' relationships with potential licensees of this intellectual property.

47. Defendants will derive a competitive advantage from using Plaintiffs' patented technology without paying compensation for such use.

48. Unless and until Defendants' continued acts of infringement are enjoined, Plaintiffs will suffer further irreparable harm for which there is no adequate remedy at law.

COUNT I
LITERAL PATENT INFRINGEMENT OF U.S. PATENT NO. 5,569,082

49. Plaintiffs reallege paragraphs 1 through 48 as if fully set forth herein.

50. This is a count for literal patent infringement under the laws of the United States against Defendants.

51. Defendants make, use, sell, offer to sell and/or import into the United States for subsequent sale or use products, services, methods or processes that directly infringe, or which employ systems, components and/or steps that make use of other systems or processes that directly infringe, at least claim 10 of the '082 Patent.

52. Defendants have been and continues to infringe one or more of the claims of the '082 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court.

53. Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.

54. Defendants' infringement has been willful, deliberate and with knowledge of Plaintiffs' rights under the '082 Patent, and unless Defendants are enjoined by this Court, such acts of willful infringement will continue. Therefore, Plaintiffs are without adequate remedy at law.

55. Plaintiffs are entitled to recover damages adequate to compensate for the infringement of the '082 Patent, as well as additional damages for willful infringement.

## COUNT II
## LITERAL PATENT INFRINGEMENT OF U.S. PATENT NO. 5,709,603

56. Plaintiffs reallege paragraphs 1 through 48 as if fully set forth herein.

57. This is a count for literal patent infringement under the laws of the United States against Defendants.

58. Defendants make, use, sell, offer to sell and/or import into the United States for subsequent sale or use products, services, methods or processes that directly infringe, or which employ systems, components and/or steps that make use of other systems or processes that directly infringe, at least claim 7 of the '603 Patent.

59. Defendants have been and continue to infringe one or more of the claims of the '603 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court.

60. Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.

61. Defendants' infringement has been willful, deliberate and with knowledge of Plaintiffs' rights under the '603 Patent, and unless Defendants are enjoined by this Court, such acts of willful infringement will continue. Therefore, Plaintiffs are without adequate remedy at law.

62. Plaintiffs are entitled to recover damages adequate to compensate for the infringement of the '603 Patent, as well as additional damages for willful infringement.

COUNT III
PATENT INFRINGEMENT BY EQUIVALENTS OF U.S. PATENT NO. 5,569,082

63. Plaintiffs reallege paragraphs 1 through 48 as if fully set forth herein.

64. This is a count for patent infringement under the doctrine of equivalents under the laws of the United States against Defendants.

65. Defendants make, use, sell, offer to sell and/or import into the United States for subsequent sale or use products, services, methods or processes that infringe by equivalents, or which employ systems, components and/or steps that make use of other systems or processes that infringe by equivalents, at least claim 10 of the '082 Patent.

66. Defendants have been and continue to infringe one or more of the claims of the '082 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court.

67. Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.

68. Defendants' infringement has been willful, deliberate and with knowledge of Plaintiffs' rights under the '082 Patent, and unless Defendants are enjoined by this Court, such acts of willful infringement will continue. Therefore, Plaintiffs are without adequate remedy at law.

69. Plaintiffs are entitled to recover damages adequate to compensate for the infringement of the '082 Patent, as well as additional damages for willful infringement.

COUNT IV
PATENT INFRINGEMENT BY EQUIVALENTS OF U.S. PATENT NO. 5,709,603

70. Plaintiffs reallege paragraphs 1 through 48 as if fully set forth herein.

71. This is a count for patent infringement under the doctrine of equivalents under the laws of the United States against Defendant.

72. Defendants make, use, sell, offer to sell and/or import into the United States for subsequent sale or use products, services, methods or processes that infringe by equivalents, or which employ systems, components and/or steps that make use of other systems or processes that infringe by equivalents, at least claim 7 of the '603 Patent.

73. Defendants have been and continue to infringe one or more of the claims of the '603 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court.

74. Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.

75. Defendants' infringement has been willful, deliberate and with knowledge of Plaintiffs' rights under the '603 Patent, and unless Defendants are enjoined by this Court, such acts of willful infringement will continue. Therefore, Plaintiffs are without adequate remedy at law.

76. Plaintiffs are entitled to recover damages adequate to compensate for the infringement of the '603 Patent, as well as additional damages for willful infringement.

## COUNT V
## INDUCEMENT OF INFRINGEMENT OF U.S. PATENT NO. 5,569,082

77. Plaintiffs reallege paragraphs 1 through 48 as if fully set forth herein.

78. This is a count for inducement of patent infringement under the laws of the United States against Defendants.

79. Defendants make, use, sell, offer to sell and/or import into the United States for subsequent sale or use products, services, methods or processes that directly infringe or infringe

by equivalents, or which employ systems, components and/or steps that make use of other systems or processes that directly infringe or which infringe by equivalents, at least claim 10 of the '082 Patent.

80. Defendants make, use, sell, offer to sell and/or import its computer based sweepstakes game systems to Internet Cafés that directly infringe or which infringe by equivalents, one or more claims of the '082 Patent to provide promotional sweepstakes at Internet Cafés.

81. Defendants, by making, using, selling, offering to sell, and licensing its computer based sweepstakes game systems to Internet Cafés that directly infringe or which infringe by equivalents, one or more claims of the '082 Patent, Defendants induce Internet Cafés to infringe one or more claims of the '082 Patent.

82. Defendants have been and continue to induce Internet Cafés to infringe one or more of the claims of the '082 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court.

83. Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.

84. Gizmo previously informed Defendants of the '082 Patent and the relevance of this patent to Defendants' ongoing business operations. Notwithstanding Defendants' knowledge of the '082 Patent, Defendants continued to induce infringement by Internet Cafés.

85. Defendants' infringement has been willful, deliberate and with knowledge of Plaintiffs' rights under the '082 Patent, and unless Defendants are enjoined by this Court, such

acts of willful inducement of infringement will continue. Therefore, Plaintiffs are without adequate remedy at law.

86.     Plaintiffs are entitled to recover damages adequate to compensate for the inducement of infringement of the '082 Patent, as well as additional damages for willful infringement.

WHEREFORE, Plaintiff Sweepstakes Patent Company LLC only seeks against Defendants:

- a) Such damages as Plaintiff SPC may have suffered but in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284;
- b) A finding of willful infringement and an enhancement of damages;
- c) A determination that this is an exceptional case;
- d) An injunction preliminarily and permanently enjoining infringement;
- e) An award to Plaintiff SPC of its attorneys' fees under 35 U.S.C. § 285;
- f) An award to Plaintiff SPC of its costs; and
- g) Such other and further relief as to the Court appears just and proper.

DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable.

DATED: October 14, 2014

                                        Respectfully submitted,

                                        Schneider Rothman Intellectual Property Law Group PLLC
                                        Counsel for Sweepstakes Patent Company, LLC
                                        4651 N. Federal Hwy
                                        Boca Raton, FL 33431
                                        561-404-4350
                                        Fax: 561-404-4353

By: _____
                                              Joel B. Rothman
                                              joel.rothman@sriplaw.com
                                              Florida Bar No. 98220
                                              Jerold I. Schneider
                                              jerold.schneider@sriplaw.com
                                              Florida Bar No. 26975